Mr. Charkey, we'll hear from you first. Thank you, your honor. May it please the court, my name is Alan Charkey. I represent the plaintiffs and appellants, the Hirchaks. The judgment of the district court should be reversed because the court abused its discretion by holding the plaintiffs to an impossibly high standard. Under Daubert and under well-settled Eighth Circuit precedent, if there is a dispute as to the factual support for an expert's opinion, the issue goes to the jury. The report is properly the subject of vigorous cross-examination, the presentation of contrary evidence and an appropriate jury instruction. The factual basis of an expert's opinion goes to credibility, not to admissibility. Only if the opinion is fundamentally unsupported may the expert be precluded. See for example, Hearst v. United States, which is cited in our brief. Moreover, under Iowa law, issues of proximate cause go to the jury, and product identification is an issue of proximate cause. Yes, a plaintiff must prove that the defendant's product caused the injury. On that, there is no dispute. But what the district court never considered and did not address is how a plaintiff proves that the product caused the injury. Not every case involving product liability involves Mr. Smith coming out of the Best Selling TV, clearly marked as such, and a receipt. Sometimes it's a little more complicated than that, and this is one of those cases. In Iowa, product identification is a matter of proximate cause, and for that, you can see Doe v. Baxter Healthcare, which is cited in Granger's brief, and also SPOR, S-P-A-U-R v. Owens Corning, 510 NW 2nd 854, which the Doe court cited for supporting that principle. Also in Iowa, proximate cause issues are almost always decided by the jury. See for example, Iowa RAP 6.9043J, and Hollingsworth v. Schmincke, 553 NW 2nd 591. Only in exceptional cases does proximate cause get decided by the court, and this case is terribly unexceptional. Now Mr. Brickman, in his report, described his methodology as to how he identified the web sling in question as being a Granger product. He examined not only the web sling that broke, he examined two others. One was in the custody of Weiler, the plaintiff's employer, and one was purchased from Granger, and Mr. Brickman found similarities in all of them. They were all 4 feet long, they were all type 3 flat eye web slings, they had similar appearance, they had a similar nominal thickness, they had similar construction, similar wear patterns, all made of polyester, as confirmed by spectroscopic analysis, and they all had the same color code, strands of color, woven into them. So his opinion that the web sling in question was a Granger product was not fundamentally unsupported. What the district court did here is, the district court postulated a question, a hypothetical that the report and affidavit of Mr. Brickman did not address, which was, could Julie, the Chinese manufacturer, have made the same web sling for others? And when she found that that question had not been answered, she then decided to preclude Mr. Brickman's testimony as inadmissible. Daubert tells us what to do in those circumstances, conceding for the purpose of argument that there was something shaky about Mr. Brickman's evidence. Justice Blackman in Daubert tells us that we have to have vigorous cross-examination, we do not strike such experts. And as far as the claim that the factual support for Brickman's opinion was insufficient, which is Granger's position, the defendant in Loudermill v. Dow Chemical, another opinion of the Eighth Circuit, 863 F. Second 566, the defendant, Dow Chemical, said the same thing as far as an expert report. Dow Chemical said there's insufficient factual basis. And the Eighth Circuit, in response to that contention, disagreed. The Eighth Circuit repeated the well-known refrain that factual support or lack thereof goes to credibility, not to admissibility. Now, in justifying preclusion of Mr. Brickman's evidence, the district court cited two cases, Smith v. Cangeter and Pro Service Automotive v. Lennon Court, in which the plaintiff's expert was barred. Smith involved a Nissan Pathfinder four-wheel drive, which allegedly had handling problems when the four-wheel drive, partial four-wheel drive, was switched on. And the expert in that case said, well, something to the effect that, well, it's very well-known that four-wheel drive, part-time four-wheel drive vehicles are hard to handle. And he never supplied, forgive me, any evidence for that opinion. In Pro Service, that case involved a defective space heater. The expert could never explain why, in spite of the internal malfunctions with the space heater, the fire, how the fire breached the case which was intact. There were no holes in the outer case of the space heater, and how that ignited the rest of the building in which it had been installed. So he was struck. Those are both causation cases, Your Honors, not product identification questions. The upshot of affirming the district court's opinion in this case is that a plaintiff who doesn't have a receipt and doesn't have a clearly marked product could not recover. And that is not what the law says, and that is not what a plaintiff should have to face. Because if that were the case, a plaintiff under those circumstances would simply be without recourse when injured by a product. Why would the judge's ruling mean that you have to have a receipt or a clearly marked product? Why couldn't you put on some other evidence that this sling came from Granger? Like records from the company or testimony from somebody who knew it came from Granger, somebody who was involved in acquiring the slings for the employer. Aren't there other ways it could be proved besides a receipt and a clearly marked product? There are, Your Honor. But in this case, there was no such evidence. No, I know there wasn't in this case, but you said if we affirm, we're limiting the plaintiffs to cases where there's a receipt or a clearly marked product. And I thought there would be other possible ways in another case when there's better evidence. Well, Your Honor, the problem is the court doesn't say that in her opinion. So that is the possible consequence of an affirmance of this opinion. There really is no gray area that the court lays out or factors that the court enunciates to address the situation of your hypothetical. Well, I'm just wondering whether the evidence here, according to the district court, was to prove it besides the two that you mentioned, and we wouldn't have to address that. But anyway, I understand your response. Thank you. All right. And I'd like to reserve my remaining 48 seconds for rebuttal. You may. Thank you. All right. Mr. Reynolds, we'll hear from you. Thank you, Your Honor. May it please the court, Kevin Reynolds, counsel for Appalese, Granger, and Dayton. As the court knows, this is a products case that was dismissed by the district court on summary judgment. Plaintiffs failed to adduce substantial evidence that the product, a web sling, was supplied by defendants. Other than the subjective opinion of plaintiffs' experts, which the trial court correctly deemed inadmissible under federal rule of evidence 702 as amended and daubered, there was no proof of product identification. Plaintiffs do not dispute that the entire case rests on the admissibility of the expert's opinion regarding product identification. We believe that the judgment of the district court below should be affirmed. The following facts were undisputed in this case as the motion for summary judgment was heard by the district court. There was no permanent sewn-in capacity tag and warning label on the subject's sling. Neither plaintiff nor his coworkers could identify who made or supplied the sling. Plaintiff's employer, Weiler, the owner of the sling, was subpoenaed under Rule 45. They could not produce a single invoice or other document showing they had purchased any sling from Granger, much less this sling. Weiler's documents further showed that it had purchased dozens and dozens of web slings from many other suppliers. None of these slings were analyzed by plaintiff's expert. Granger searched hundreds of pages of its own records. None showed the supply of a single web sling to Weiler. And finally, rogue and unlabeled slings and straps came into the Weiler plant off of steel supply trucks. Employees were cautioned time and time again not to use those slings. Plaintiff's only proof of product ID was a flawed opinion by its expert, Brickman. As the district court found, his opinion was based on quote-unquote insufficient facts, making reference to subparagraph B of federal rule of evidence 702. And as a result, it contained an analytical gap. An expert opinion based on insufficient facts is unreliable and inadmissible into evidence. The judgment call as to what facts are deemed quote-unquote sufficient to undergird an opinion rests with the sound discretion of the trial court in the proper exercise of its gatekeeping function. In this case, Judge Ebinger was well within her discretion to find that Brickman's opinion was based on insufficient facts and thus was inadmissible. As the district court judge pointed out in a cogent, well-reasoned opinion, the expert's opinion was fatally flawed in that he failed to establish a probability that the subject sling was a Dayton brand sling that had been supplied by Granger. In a product... Counselor? Yes? But at the summary judgment stage, is the question whether it's admissible? I think it is, Your Honor, from the standpoint that under Rule 46, a summary judgment motion has to be supported and opposed by admissible evidence. The evidence of product identification in this case came really only from Mr. Brickman, plaintiff's experts. So the Rule 56 inquiry then has to take a look at the admissibility of that expert witness's product ID opinion, and that's what takes you into the Daubert and Rule of Evidence 702 analysis. Mr. Reynolds, you'll concede, won't you, that to be admissible, the expert's opinion doesn't have to rule out all other possibilities? That's correct. And that's one argument made, yes. Isn't that, in effect, what Judge Ebinger did here? Not really, Your Honor, and let me try to explain. The district court's decision was based on subparagraph B of Rule 702. She found that the expert had insufficient facts or data. Now, in all fairness, some of these elements of the Daubert and Rule 702 analysis don't necessarily fall into distinct categories or buckets, and I think it's fair to say there's some overlap. But her decision was based on insufficient facts and an insufficient analysis by the plaintiff's expert. I think part of the confusion, Your Honor, on this failure to rule out other possibilities is that in the district court, the plaintiff's expert filed a five-page affidavit to supplement his 55-page report of opinions. And in that five-page affidavit, the plaintiff's expert said in two different locations that based on his analysis, he had excluded every other possibility. Consider this fact. Judge Ebinger looked at that affidavit and found that that analysis was based on insufficient facts and therefore was inadmissible. An alternative ground upon which this court could affirm the ruling below would be that according to the plaintiff's expert's own testimony in his affidavit, he was provably wrong. The judge, in essence, proved the expert wrong by showing that there's another possibility here, and that possibility is that this Julie Sling, this company in the People's Republic of China that fabricates slings, could have sold these slings to other people, not Granger and not Dayton slings. And for that reason, when the expert makes the statement under oath in an affidavit that I have excluded every other possibility under the evidence, he has actually blown a hole through his own opinion, and that begs the question, is that expert's opinion, given that background on product identification, a reliable opinion under Rule 702 and under Robert, such that it's admissible within the context of Rule 56 motion for summary judgment? As this court knows, in a product's case, plaintiffs have the burden of proof. Yes? When you refer to whether the Chinese manufacturer might have sold the slings to others, are you acknowledging that there was sufficient evidence that this sling did come from that manufacturer, or is that also a disputed issue? No, no, we do not acknowledge that fact. I mean, that is not a fact that is proven in this record, that this particular sling came from the Chinese manufacturer. I think what Judge Ebinger found was, even if it did, there's this other possibility. Are you saying, was there evidence that other people make slings of the same size and color? Yes. In fact, the records that were produced in discovery show that many other web slings were bought by Weiler, and a lot of them were four-foot slings. They were one inch wide. I mean, the other side took issue with my use of the term ubiquitous. These four-foot web slings are ubiquitous in industry. They really are. A good lot of them are made of polyester. They're yellow. A lot of them are an inch wide. A lot of them are four feet long. A lot of them are type three slings where they have loops at the end sewn onto themselves. Every polyester sling sold in the United States, and this is contained within Brickman's report, has a blue thread down the middle of the sling. That signifies that it's a sling made of polyester. Most all of these slings have internal red threads. That's so when the sling is used and worn out too much, it will wear through and start to show the red threads inside. That means you need to take the sling and throw it away and replace it with a new sling. One other question. I understood that there was another Granger sling that was recovered from the site shortly after the incident. Is that true? If so, does that support the expert's opinion or inference that the subject sling was also from Granger? That is a true fact, Your Honor. That is in the record. Again, that's a separate sling and that's not the subject sling. That would be some additional circumstantial evidence to support their claim. Again, we don't think it's enough evidence under Rule 702 such that the expert could give a reliable and admissible opinion on product identification based on sufficient facts. Was there any other evidence about where the Granger sling came from? No. I know your brief says there are no records that the company ever received anything from Granger, but if they had a sling, does that undermine your record's evidence? What's the explanation for how it got there? There's no proof in the record one way or the other how that sling got there or where that sling came from. That's just what the state of the record is. Again, I think that's circumstantial evidence in their favor, but we think that the evidence was actually in favor of our position that there was no substantial evidence that the subject sling, which of course is a different sling than the one we're mentioning here, that the subject sling was supplied by Granger. I understand you said there was no direct evidence of that. I was just wondering whether that circumstantial evidence is sufficient in your opinion. We don't think it's sufficient enough, Your Honor, because we think if they're proving their case by virtue of circumstantial evidence, they need to show that their proposition is  If they show just a mere possibility, you know, a mere possibility, that would invite a layperson jury to engage in speculation and conjecture if that issue were to go to the jury. I see that I'm out of time unless there's any other more questions. Thank you very much. Very well. Thank you for your argument. Mr. Charkey, we'll hear from you in rebuttal. Okay, thank you, Your Honor. Your Honor, yes, another exemplar was examined by Mr. Brickman, which was a Weiler, I'm sorry, a Granger product. I agree with Mr. Reynolds. We do not know how that came to be within Weiler's possession, but Iowa product liability law does not require a sale in order for the manufacturer slash supplier to be held liable. So the fact that it was not sold or supplied or nobody can figure out how it got there is not necessarily going to inculpate, I'm sorry, exculpate Granger. Judge, Granger is correct in that an expert is not required to rule out all other possibilities as Lozon versus Senko products tells us. And as far as what Mr. Brickman or what the evidence was in the case about what Julie does vis-a-vis other manufacturers, there is no evidence in the case as to what Julie may or may not do for other manufacturers. It's just not there. Very well. Well, thank you for your rebuttal. Thank you to both counsel for your arguments. The case is submitted and the court will file an opinion in due course.